UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EXTENET SYSTEMS, INC.,<br><br>                              Plaintiff,<br><br>vs.<br><br>THE CITY OF SOMERVILLE, MASSACHUSETTS, THE SOMERVILLE CITY COUNCIL, and KATJANA BALLANTYNE, MATTHEW MCLAUGHLIN, STEPHANIE HIRSCH, WILFRED MBAH, MARY JO ROSETTI, WILLIAM A. WHITE, JR., JEFFERSON SCOTT, BEN EWEN-CAMPEN, JESSE CLINGAN, MARK NIEDERGANG and LANCE DAVIS, in their official capacity as members of the Somerville City Council and not as individuals.<br><br>                             Defendants. | Civil Action No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)**

Plaintiff, ExteNet Systems, Inc. ("Plaintiff" or "ExteNet"), by its undersigned attorneys, for its Complaint against the City of Somerville, Massachusetts, the Somerville City Council, and Katjana Ballantyne, Matthew McLaughlin, Stephanie Hirsch, Wilfred Mbah, Mary Jo Rosetti, William A. White, Jr., Jefferson Scott, Ben Ewen-Campen, Jesse Clingan, Mark Niedergan, and Lance Davis, each in their official capacity as members of the Somerville City Council and not as individuals, (collectively, the "City or "Defendants"), respectfully alleges as follows and hereby petitions this Court to: conduct an expedited review of Defendants' failure to act on applications submitted by ExteNet for access to the public rights-of-way, in violation of Federal  and to grant injunctive and declaratory relief to ExteNet permitting access to the public rights-of-way.

1

**INTRODUCTION AND REGULATORY FRAMEWORK**

1. In 1996, Congress enacted the Telecommunications Act of 1996, No. 104-104, 110 Stat. 56 (1996), which amended the Communications Act of 1934, codified in 47 U.S.C. §151 et seq. (hereinafter, the "Act" or the "TCA") as a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans . . . ."[1]

2. Congress has declared that there is a need for wireless communication services, including "personal wireless services," as set forth in the Act, and the rules, regulations and orders of the Federal Communications Commission ("FCC") promulgated pursuant thereto. In order to foster its pro-competitive, deregulatory national policy, Congress included provisions in the Act that encourage competition by restricting the regulation of the placement of personal wireless service facilities by State and local governments and instrumentalities thereof.

3. Section 332(c)(7) of the Act imposes substantive and procedural limitations on State and local governments and instrumentalities thereof to ensure that the Act's pro-competitive goals are not frustrated and it expressly preempts any action or inaction by State or local governments or their agents that effectively prohibits the provision of wireless services.

4. Section 332(c)(7) of the Act strikes a balance between "preserv[ing] the traditional authority of state and local governments to regulate the location, construction, and modification of wireless communications facilities like cell phone towers" and "reduc[ing] . . . the impediments imposed by local governments upon the installation of facilities for wireless communications."[2]

---

[1] The Act, S. Rep. 104-230, at 1 (Feb. 1, 1996) (Conf. Report).

[2] *T-Mobile S., LLC v. City of Roswell*, 574 U.S. __; 135 S. Ct. 808, 814; 190 L.Ed.2d 679 (2015); *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115; 125 S. Ct. 1453, 161 L.Ed.2d 316, (2005).

5. While Section 332(c)(7)(A) of the Act preserves "the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities," that authority is subject to significant limitations – including Section 332(c)(7)(B)(ii) of the Act, which requires States and local governments or instrumentalities thereof to "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with [the relevant] government or instrumentality, taking into account the nature and scope of such request."[3]

6. The purpose of Section 332(c)(7)(B)(ii) of the Act is to counteract delays in consideration of wireless facility siting applications by State or local governments or their agents, which thwart timely rollout and deployment of wireless service.

7. Section 332(c)(7)(B)(v) of the Act provides that:

> any person adversely affected by any . . . failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such . . . failure to act, commence an action in any court of competent jurisdiction.

8. As the federal agency tasked with implementing the Act, the FCC has the authority to promulgate rules and regulations to achieve the purposes of the Act.

9. Pursuant to its statutory authority, in November 2009, the FCC adopted an initial order establishing what constitutes a "reasonable period of time" under the Act for a State or local government or instrumentality thereof to take action on an application for a wireless communications site.[4]

---

[3] 47 U.S.C. § 332(c)(7)(B)(ii).

[4] *In the Matter of the Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances*

10. In the 2009 Shot Clock Order, the FCC recognized that "personal wireless service providers have often faced lengthy and unreasonable delays in the consideration of their facility siting applications, and that the persistence of such delays is impeding the deployment of advanced and emergency services."[5] In so holding, the FCC sought to promote the deployment of broadband and other critical wireless services.[6]

11. The FCC noted that the purpose of this "shot clock deadline" was to give State or local governments or instrumentalities thereof, "a strong incentive to resolve each application within the timeframe defined as reasonable, or they will risk issuance of an injunction granting the application. In addition, specific timeframes for State and local government deliberations will allow wireless providers to better plan and allocate resources. This is especially important as providers plan to deploy their new broadband networks."[7]

12. On September 26, 2018, the FCC revised its Shot Clocks and policy.[8]

13. It is Third Report and Order the FCC "adopt[ed] two new Section 332 shot clocks for Small Wireless Facilities—60 days for review of an application for collocation of Small Wireless Facilities using a preexisting structure and 90 days for review of an application for attachment of Small Wireless Facilities using a new structure."[9]

---

*that Classify All Wireless Siting Proposals as Requiring a Variance*, WT 08-165, FCC 09-99, F.C.C.R. 13,994 ¶ 71, Nov. 19, 2009. (the "2009 Shot Clock Order").

[5] 2009 Shot Clock Order at ¶32.

[6] *Id.*

[7] *Id.* at ¶38.

[8] *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment; Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, WT 17-29, WC 17-84, FCC 18-133, Sept. 26, 2018. ("Third Report and Order"). The Third Report and Order became effective as of January 14, 2019. 83 Fed. Reg. 51,867 (2018).

[9] *Id.* at ¶ 105.

14. The FCC's "Shot Clock" timelines are codified by the FCC at 47 C.F.R §1.6003.

15. The FCC also "determined that failure to meet the applicable time frame enables an applicant to pursue judicial relief within the next 30 days."[10]

16. The Shot Clock Order further codified at 47 C.F.R. § 1.6003(a):

> *Timely action required.* A siting authority that fails to act on a siting application on or before the shot clock date for the application, as defined in paragraph (e) of this section, is presumed not to have acted within a reasonable period of time.

17. The presumptively "reasonable period of time" runs from when an Application is first proffered.[11]

18. The FCC specifically noted that

> if an applicant proffers an application, but a state or locality refuses to accept it until a pre-application review has been completed, the shot clock begins to run when the application is proffered. In other words, the request is "duly filed" at that time, notwithstanding the locality's refusal to accept it.[12]

19. Under the FCC's Rules and Regulations, a determination of incompleteness of a siting application tolls the shot clock only if the State or local government or instrumentality thereof provides notice to the applicant in writing within 30 days of the submission of the application, specifically identifying all missing information, and specifying any code provision, ordinance, application instruction, or otherwise publicly-stated procedures that require the information to be submitted.[13]

---

[10] *Id.* at ¶ 19.

[11] 47 C.F.R. § 1.6003(e).

[12] Third Report and Order at ¶145 (citations omitted)

[13] 47 C.F.R. § 1.6003(d).

5

20.     Once a siting application is filed with a State or local government or an instrumentality thereof, the 60 or 90-day shot clock period begins to run and will not be tolled unless the State or local government or instrumentality thereof responds in writing within the first 30 days and identifies specifically what, if any, information is missing per the applicable statutory requirements.

21.     The expiration of the shot clock period without a determination by the State or local government or instrumentality thereof constitutes a "failure to act" under the Act and allows the applicant to seek redress in federal court pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

22.     In addition, Section 253 of the Act prohibits State or local authorities from erecting barriers that may prohibit or may have the effect of prohibiting the ability of any entity to provide telecommunications services, including taking action or inaction that results in an unreasonable delay in the deployment of the provider's facilities and provision of telecommunications services.[14] In particular, Section 253(a) of the Act provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Moreover, Section 253(c) of the Act limits the power of State and local government authorities to "manage the public rights-of-way" on a "competitively neutral and nondiscriminatory basis."

23.     Here, ExteNet submitted certain applications to the Defendants on March 26 and 27, 2019 for construction of three (3) personal wireless service facility nodes on or adjacent to existing Eversource owned utility poles in the public rights-of-way located within the City's jurisdiction.

---

[14] 47 U.S.C. § 253(a).

24. Because these applications were for personal wireless service facility nodes on or adjacent to existing Eversource owned utility poles in the public rights-of-way located with the City's jurisdiction, they are considered "collocation" applications under FCC rules and regulations

25. Defendants did not respond in writing to ExteNet within the first 30 days identifying that any information was missing in the Applications.

26. Defendants failed to take action within 60 days of submission of the Applications, thereby triggering the filing of this action within 30 days thereafter.

27. Under Sections 253(a) and 332(c)(7)(B) of the Act, ExteNet is entitled to injunctive and declaratory relief permitting it access to the public rights-of-way set forth in the Applications to construct its personal wireless service facilities under the Act.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over this action pursuant to: (a) 47 U.S.C. §§ 253 and 332(c)(7)(B) of the Act because ExteNet has been adversely affected and aggrieved by Defendants' actions in violation of those provisions of the Act; and (b) 28 U.S.C. § 1331 because this is a civil action that presents federal questions arising under the Act.

29. This Court has jurisdiction to order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and has supplemental jurisdiction with regard to any state law claims pursuant to 28 U.S.C. § 1367.

30. This Court has personal jurisdiction over the Defendants, and venue is proper in this Court, as the Defendants conduct or have conducted continuous, systematic, and routine business within the County of Middlesex in the State of Massachusetts and within the jurisdiction of this Court, pursuant to 28 U.S.C. § 101.

31. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this action occurred in the District of Massachusetts.

## EXPEDITED PROCEEDING

32. Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the Act, this Court "shall hear and decide [this] action on an expedited basis."

## THE PARTIES

33. ExteNet is a Delaware corporation and maintains its principal place of business at 3030 Warrenville Road, Suite 340, Lisle, Illinois 60532-3633, in the County of DuPage, Illinois.

34. ExteNet provides wholesale, facilities-based telecommunications services and holds certificates to provide such services in 45 states and the District of Columbia.

35. ExteNet, through its predecessor in interest, ClearLinx Network Corporation, is registered with the Massachusetts Department of Telecommunications and Cable to provide intrastate telecommunications services in Massachusetts.

36. ExteNet builds, owns, and operates wholesale, neutral-host distributed network facilities that improve the coverage and capacity of existing and new wireless networks.

37. ExteNet's distributed network facilities consist of: (a) fiber optic cable; and (b) small antennas and supporting equipment that are either attached to utility poles and other structures in the public rights-of-way or suspended on cables strung between utility poles or wireless support structures.

38. Wireless service providers — such as Verizon Wireless, AT&T, Sprint, and T-Mobile — pay ExteNet to use its distributed network facilities to assist them in providing wireless telecommunications services to retail consumers.

39. Defendant, City of Somerville, Massachusetts is a municipal corporation duly organized under the laws of the State of Massachusetts with a principal place of business at 93 Highland Avenue, Somerville, Massachusetts 02143, in the County of Middlesex.

40. Defendant, the Somerville City Council, is an agency of Defendant City of Somerville, Massachusetts with authority under federal, Massachusetts and City laws to manage access to public rights of way for equipment used in the provision of telecommunications services and maintains its principal place of business at 93 Highland Avenue, Somerville, Massachusetts 02143, in the County of Middlesex.

41. The following defendants are members of the Somerville City Council and are named herein in their official capacity and not as individuals.

(a) Defendant, Katanya Ballantyne, is named herein in her capacity as a member of the Somerville City Council and not as an individual.

(b) Defendant, Matthew McLaughlin, is named herein in his capacity as a member of the Somerville City Council and not as an individual.

(c) Defendant, Stephanie Hirsch, is named herein in her capacity as a member of the Somerville City Council and not as an individual.

(d) Defendant, Wilfred Mbah, is named herein in his capacity as a member of the Somerville City Council and not as an individual.

(e) Defendant, Mary Jo Rosetti, is named herein in her capacity as a member of the Somerville City Council and not as an individual.

(f) Defendant, William A. White, Jr. is named herein in his capacity as a member of the Somerville City Council and not as an individual.

(g) Defendant, Jefferson Scott, is named herein in his capacity as a member of the Somerville City Council and not as an individual.

(h) Defendant, Ben Ewen-Campman, is named herein in his capacity as a member of the Somerville City Council and not as an individual.

(i) Defendant, Jesse Clingan, is named herein in his capacity as a member of the Somerville City Council and not as an individual.

(j) Defendant, Mark Niedergang, is named herein in his capacity as a member of the Somerville City Council and not as an individual.

(k) Defendant, Lance Davis, is named herein in his capacity as a member of the Somerville City Council and not as an individual.

## **FACTS COMMON TO ALL COUNTS**

42. On March 26 and 27, 2019, ExteNet proffered Applications to the City for permits to allow for the construction of three (3) personal wireless service facility nodes on or adjacent to existing Eversource owned utility poles (collocation) in the public rights-of-way located in the City.

43. Applications for the following two (2) personal wireless service facility nodes to be installed on existing Eversource owned utility poles in the public rights of way located in the City were proffered on March 26, 2019:

- ExteNet Network Node ID: NE-MA-BSTBSC01-00044
  Located at: 96 Highland Avenue, Somerville, MA
  Somerville File No. BL19-000030; and,

- ExteNet Network Node ID: NE-MA-BSTBSC01-00045
  Located at: 466 Medford Street, Somerville, MA
  Somerville File No. BL19-000029.

44. An Application for the following personal wireless service facility nodes to be installed on an existing Eversource owned utility pole in the public rights of way located in the City was proffered on March 27, 2019:

- ExteNet Network Node ID: NE-MA-BSTBSC01-00040
  Located at: 5 to 7 Highland Road, Somerville, MA,
  Somerville File No. BL19-000031.

45. ExteNet has a separate agreement with Eversource permitting installation of wireless service facility nodes on Eversource owned and controlled utility poles and other structures in the public rights-of-way and permitting installation suspended on cables strung between utility poles or wireless support structures.

46. According to the FCC's Third Report and Order, the proffering by ExteNet of Applications with the City, started the formal application process and the "FCC Shot Clock" on each of the Applications.

47. Each of the Applications is for installation of personal wireless service facilities on or adjacent to existing utility poles, which under the Shot Clock Order, constitute "collocation."[15]

48. Pursuant to 47 C.F.R. § 1.6003, Defendants had 60 days from the date of submission of the Applications to approve or reject the Applications and, if approved, issue any necessary Permits to ExteNet.

49. Based on the submission date of the Applications on March 26 and 27, 2019, the "reasonable period of time" under the Act for Defendants to act on the Applications was 60 days, since the Applications are for collocation.

50. The 60-day "FCC Shot Clock" for the Applications submitted on March 26, 2019 expired on May 25, 2019.

---

[15] 47 C.F.R. § 1.6002(g).

51. The 60-day "FCC Shot Clock" for the Application submitted on March 27, 2019 expired on May 26, 2019.

52. To date, the Defendants have failed to act on the Applications in violation of its statutory responsibilities under the Act.

53. Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), this Action is timely filed within thirty (30) days of the Defendants' May 25 and 26, 2019 failures to act.

## COUNT I
### (Unreasonable Delay and Failure to Act on the Applications in Violation of 47 U.S.C. § 332(c)(7)(B)(ii), the Shot Clock Order and the 2014 FCC Order)

54. ExteNet repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

55. 47 U.S.C. § 332(c)(7)(B)(ii) provides that, "[a] State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."

56. Pursuant to 47 C.F.R §1.6003(a), "a siting authority that fails to act on a siting application on or before the shot clock date for the application . . . is presumed not to have acted within a reasonable period of time."

57. The Applications submitted by ExteNet constitute a request for the placement of personal wireless service facilities and, as such, ExteNet is entitled to the benefits and protections of the Act, FCC Orders, and the FCC's Rules and Regulations with respect to the Applications.

58. Based on information and belief, each of the Sites referenced in the Applications are within the public rights-of-way owned or under the jurisdiction of the City.

59. Pursuant to 47 C.F.R. § 1.6003(d), a determination of incompleteness of a siting application tolls the shot clock only if the State or local government or instrumentality thereof provides notice to the applicant in writing within 30 days of the submission of the application, specifically identifying all missing information, and specifying any code provision, ordinance, application instruction, or otherwise publicly-stated procedures that require the information to be submitted.

60. If the State or local government or instrumentality thereof does not respond in writing within the first 30 days of submission of a siting application, and fails to specifically identify what, if any, information is missing, the shot clock is not tolled. *Id.*

61. Neither the City nor anyone acting on the City's behalf notified ExteNet in writing within 30 days of submission of the Applications of any missing information from the Applications.

62. Pursuant to 47 C.F.R. § 1.6003(c), the City was required to act on ExteNet's March 26, 2019 Applications within 60 days of submission, or no later than May 25, 2019.

63. Pursuant to 47 C.F.R. § 1.6003(c), the City was required to act on ExteNet's March 27, 2019 Applications within 60 days of submission, or no later than May 26, 2019.

64. To date, the City has neither approved nor rejected ExteNet's Applications.

65. Defendants' failure to meet the applicable timeframe presumptively constitutes a failure to act under Section 332(c)(7)(B)(v), enabling ExteNet as applicant to pursue judicial relief.

66. In the Third Report and Order, the FCC specifically found:

> State or local inaction by the end of the Small Wireless Facility shot clock will function not only as a Section 332(c)(7)(B)(v) failure to act but also amount to a presumptive prohibition on the provision of personal wireless services within the meaning of Section 332(c)(7)(B)(i)(II). Accordingly, we would expect the state or local government to issue all necessary permits without further delay. In

cases where such action is not taken, we assume, for the reasons discussed below, that the applicant would have a straightforward case for obtaining expedited relief in court.[16]

67. ExteNet has commenced this action within thirty (30) days of Defendants' failure to act under the shot clock.

68. The Applications have been pending for more than the requisite 60 days, and the Defendants have failed to take final (or any) action on them.

69. The Defendants' unreasonable delay has included, without limitation:

   a) the failure to request any purported missing information from the Applications, including signed and sealed engineering drawings, within 30 days of submission of the Applications; and,

   b) the failure to take final action within the "shot clock" timeframe codified in 47 C.F.R. § 16003.

70. Defendants' failure to act has delayed and prevented ExteNet from securing the necessary approvals and permits to construct and install personal wireless service facilities on, or suspended adjacent to, existing utility poles in the public right-of-way located in the City.

71. By its acts and omissions, Defendants have violated 47 U.S.C. § 332(c)(7)(B)(ii), as authoritatively interpreted by the FCC and codified in the Code of Federal Regulations.

72. Under the circumstances, ExteNet is entitled to permanent injunctive relief through an order and judgment granting ExteNet's Applications and ordering that Defendants: 1) issue all necessary permits, and, 2) authorize ExteNet to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

---

[16] Third Report and Order at ¶ 118.

## COUNT II
### (Unlawful Prohibition on Provision of Personal Wireless Services in Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II))

73. ExteNet repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

74. Section 332(c)(7)(B)(i)(II) of the Act provides that the "regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

75. Under the FCC's Third Report and Order,

> failing to issue a decision up or down during this time is not simply a "failure to act" within the meaning of applicable law. Rather, missing the deadline also constitutes a presumptive prohibition. We would thus expect any locality that misses the deadline to issue any necessary permits or authorizations without further delay. We also anticipate that a provider would have a strong case for quickly obtaining an injunction from a court that compels the issuance of all permits in these types of cases.[17]

76. Pursuant to the FCC's rulings, including the Third Report and Order, Defendants' unreasonable delay and failure to act on the Applications within the 60-day shot clock period constitutes a presumptive prohibition under Section 332(c)(7)(B)(i)(II).

77. Defendants' failure to act on the Applications had the effect of prohibiting ExteNet from providing personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

78. Under the circumstances, ExteNet is entitled to permanent injunctive relief through an order and judgment granting ExteNet's Applications and ordering that Defendants: 1) issue all necessary permits, and, 2) authorize ExteNet to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

---

[17] Third Report and Order, ¶13.

## COUNT III
**(For Prohibition of Services and Bar to Entry in Violation of 47 U.S.C. § 253(a))**

79. ExteNet repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

80. 47 U.S.C. § 253(a) provides that "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

81. 47 U.S.C. § 253(a) applies to a State or local government's failure to act, which unreasonably delays deployment of a provider's personal wireless service facilities and provision of telecommunications services.

82. ExteNet has been attempting to exercise its right to access the public rights-of-way under exclusive control of the City to provide telecommunications services.

83. The City has unreasonably delayed acting on ExteNet's Applications seeking authorization to install personal wireless service facilities on, or suspended adjacent to, existing utility poles in the public rights-of-way under the jurisdiction of the City.

84. The City's failure to act on the Applications constitutes an unreasonable ongoing delay which has had the effect of prohibiting the ability of ExteNet to provide personal wireless facilities and telecommunications services in violation of 47 U.S.C. § 253(a).

85. ExteNet has suffered and will continue to suffer irreparable harm as a result of Defendants' failure to act on the Applications and the resulting delay of ExteNet's efforts to deploy its infrastructure within the public rights-of-way under the jurisdiction of Defendants.

86. Under the circumstances, ExteNet is entitled to permanent injunctive relief through an order and judgment granting ExteNet's Applications and declaring that Defendant: 1) issue all

necessary permits, 2) authorize ExteNet to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

## COUNT IV
### (For Declaratory Relief and Permanent Injunction)

87. ExteNet repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

88. A present and actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties. ExteNet contends that the Defendants' actions and omissions are in violation of the Act, the Shot Clock Order, the 2014 FCC Order, and the Third Report and Order.

89. ExteNet and the public have been and will continue to be adversely affected by the Defendants' actions and omissions.

90. Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of ExteNet's rights and the Defendants' obligations and authority.

91. As a result of Defendants' actions and omissions, ExteNet has been, and will continue to be, damaged and irreparably harmed absent the relief requested herein.

92. The harm caused by the Defendants' actions and omissions includes, but is not limited to, an effective prohibition on ExteNet's ability to provide personal wireless services at the Sites, and unreasonable delay in taking final (and any) action on the Applications, all impairing ExteNet's (a) ability to provide the public with reliable wireless telecommunications service; (b) ability to compete with other providers of telecommunications services; (c) full use of its existing FCC and Massachusetts telecommunications authorizations, and or licenses and business investments; and (d) good will and business reputation.

93. ExteNet has a likelihood of success on the merits because it is entitled to access public rights-of-way under Federal law and there is no reasonable justification for Defendants' failure to act on ExteNet's Applications to install personal wireless service facilities on, or suspended adjacent to, existing utility poles in the public rights-of-way.

94. The harm that ExteNet has suffered and continues to suffer from the Defendants' actions and omissions is not reasonably susceptible to accurate calculations and cannot be fully and adequately addressed through an award of damages.

95. Given that the matter in dispute is Defendants' failure to issue permits and authorize ExteNet to install personal wireless service facilities on, or suspended adjacent to, existing utility poles in the public rights-of-way, ExteNet cannot be made completely whole by damages and has no other adequate remedy at law other than the Court ordering that the Applications be deemed granted or by the Court compelling Defendants to grant ExteNet's Applications.

96. A balancing of the equities tips in ExteNet's favor in that it has proceeded throughout the application process in good faith and has submitted all requested forms and documents, while Defendants failed to timely request any missing information from ExteNet within the requisite 30-day period of time from the submission of the Applications.

97. In contrast, Defendants have failed to act as required by Federal law.

98. In contrast to the immediate and irreparable injury being suffered by ExteNet, its customers, and the public interest, the Defendants will suffer no significant injury if the Court issues the requested injunction.

99. As such, ExteNet is entitled to a judgment and order of permanent injunction compelling Defendants to issue permits and any other approvals required to allow ExteNet to

install the personal wireless service facilities on, or suspended adjacent to, existing utility poles in the public rights-of-way that are the subject of this Action.

## PRAYER FOR RELIEF

**WHEREFORE**, ExteNet respectfully requests that, pursuant to 47 U.S.C. § 332(c)(7)(B)(v), the Court hear and decide this action on an expedited basis, and issue an Order and Judgment in its favor as follows:

a) finding and declaring that Defendants' failure to act upon ExteNet's Applications within a reasonable time constitutes a violation of 47 U.S.C. § 332(c)(7)(B)(ii);

b) finding and declaring that Defendants' failure to act upon ExteNet's Applications within a reasonable time, pursuant to 47 C.F.R §1.6003(c), amounts to an illegal and unreasonable delay in violation of 47 U.S.C. § 332(c)(7)(B)(ii);

c) finding and declaring that Defendants' failure to act upon ExteNet's Applications have prohibited or had the effect of prohibiting ExteNet from providing personal wireless services in violation of 47 U.S.C. § 253(a) and 47 U.S.C. § 332(c)(7)(B)(i)(II);

d) finding and declaring that Defendants' failure to act upon ExteNet's Applications constitutes unreasonable discrimination against ExteNet in the management of the public rights-of-way and in the provision of functionally equivalent personal wireless and telecommunications services in violation of 47 U.S.C. § 253(c) and 47 U.S.C. § 332(c)(7)(B)(i)(II);

e) finding and declaring that Defendants' failure to act upon ExteNet's Applications violates Massachusetts law.

f) granting the Applications and issuing an order mandating or an order requiring

   that Defendants immediately issue, pursuant to Federal and Massachusetts law, all approvals, necessary permits and authorizations for ExteNet to immediately install small wireless service facilities, and associated infrastructure in the City controlled public-rights-of-way as set forth in the Applications;

g)  awarding ExteNet its damages, reasonable attorneys' fees, costs, disbursements, and other expenses of this action as permitted by law; and

h)  granting such other and further relief as the Court deems just and proper.

      Respectfully submitted,

      EXTENET SYSTEMS, INC.

      By its attorneys,

      */s/ William A. Worth*
William A. Worth, BBO #544086
wworth@princelobel.com
Michael A. Kippins, BBO #688613
mkippins@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Telephone: (617) 456-8000
Fax: (617) 456-8100


Haran C. Rashes (pro hac to be filed)
Director of External Relations
ExteNet Systems, Inc.
3030 Warrenville Road, Suite 340
Lisle, IL 60532
(630) 245-2064 – Office
(734) 660-9283- Mobile
hrashes@extenetsystems.com

Date: June 24, 2019